1840-22 United States of America v. Andre D. Hatcher Jr. Good morning, Your Honors. Christopher Bruno on behalf of Appellant Andre Hatcher. Before I begin, I'd like to reserve three minutes for rebuttal. May it please the Court. Mr. Hatcher was entitled to be sentenced based on issues properly disclosed to him and on facts supported by a preponderance of the evidence. But here, premised on the government's speculation, the Court stated its belief no fewer than four times that Mr. Hatcher may have committed a shooting, a shooting which he was never charged with and that was never mentioned in the PSR nor in a sentencing memorandum. These facts constitute two separate bases for remand. But there's also a third here. The District Court made a clearly erroneous finding when it concluded that Mr. Hatcher had been convicted of two robberies when no evidence supported such a finding. And it's this third issue which I'd like to start with. The government concedes error here, that is, that the record does not support a conclusion that Mr. Hatcher was in fact convicted of two robberies. And so there's no question about whether there's an error. The only issue is whether or not this made a difference in Just on that point, I don't feel like that's your main point, but just on that one, just to tell you my reaction to it. I mean, is it unfair to say there's a conflict here? In other words, you have the PSR which says one thing, everybody agrees to it, including the judge, and then this statement in the course of the litany of crimes where a mistake. I mean, so only one can be true, right? And isn't it a better inference and a more likely inference that the second statement orally is a slip of the tongue, given that the paper record establishes everything else? Your Honor, I don't think this court can presume that a judge's findings are just a mere mistake as opposed to something that he's subjected to help. The findings are accepting the PSR. Those are findings. Well, that's correct, Your Honor. But specifically in reciting a criminal history, the judge made a misstatement. We have to, we can't assume that just a broader statement accepting the PSR in its entirety substitutes for what the judge was actually finding there, which is that there were two robberies. But did the two robberies affect his criminal history score? They did not, Your Honor. But of course, this is a case in which there was an upward variance. And so obviously, the judge found that the PSR and that the criminal history score was inadequate to arrive at Mr. Hatcher's actual sentence. And so the robbery could have, you his criminal history was extensive and violent. And adding an extra robbery to that, one that wasn't supported in the PSR and one that he had, in fact, not been convicted of, feeds that view unnecessarily. Remind me, did counsel at the time say, Your Honor, I may not have been listening carefully, but I think you said two. You did mean one, right? Did anyone say that? No, Your Honor. And that's why we concede we're here on a plain error standard. However, we can take the robbery issue and also this error doesn't need to be seen in a vacuum. It can be read cumulatively with the other errors that occurred in this case regarding the uncharged shooting. And so, as we've talked about before, or as we mentioned in our briefs, one issue, a procedural issue, is the fact that resentencing is warranted here under the two-pronged test of Fleming and Coppinger because the issue of the uncharged shooting was a surprise that came up at the sentencing hearing. There is no reason... On surprise, why don't you just give the answer to the question you know is coming, you know, why it wasn't completely a surprise. How does that work into it? I'm sorry, can you rephrase the question? It was acknowledged in discovery. Yes. Okay, so I'm just trying to, you're using the word surprise, so you know what's coming. What's the answer to that? Your Honor, merely the fact that the government disclosed a fact in discovery is not enough to signal that the issue itself is going to come up at the sentencing hearing. And in fact, the government had numerous opportunities before the sentencing hearing to bring this fact into the course of issues that would be considered at the sentencing hearing. That's what a PSR is for. That is what pretrial sentencing memoranda are for. The government did not avail itself of those vehicles. And in fact, the government admits that the court... Is it possible that the reason was the original understanding? Remember, the original understanding is they weren't going to ask for more. And it seems to me what it looked like was happening is this was being used defensively in response to some of your client's explanations. Well, this whole self-defense thing is a little sketchy given that the same gun was used in a violent crime three days earlier. So why isn't that a fair assessment of what happened? Because it's not, I think, outside the pale of whether or not the gun was used defensively or not. The question is whether the issue of this uncharged shooting, which had never been heard of before the hearing, had come as a surprise. And so there was no reason that defense counsel would have believed that was on the table. Just by virtue of the fact that the government hadn't raised it in these earlier opportunities means that there's no reason for the defense counsel walking into that hearing to have expected that that would have come up. So, I mean, here's the hypothetical. They point out in discovery, let's say it's just a gun possession charge. They point out in discovery that, you know, gosh, the last time we looked in your house and did a search of your house, we found 15 guns. Okay? And so in the course of the hearing, he gets up and he says, I've never possessed a gun in my life and I don't know how this one got here. He knows, the government knows about the 15 guns. He makes that statement. Is there surprise when the government says, Your Honor, we have to tell the court about this evidence we have of 15 guns found in his house? That's not surprise. You know what you're walking into when you do that. I mean, first off, Your Honor, I'd suggest that fact would probably be in a PSR. That's the purpose that it had offered it. But even assuming that... No, it wouldn't be in the PSR precisely for the reason of the plea agreement. They're trying to keep the sentence low. Oh, but the government here wasn't trying to keep the sentence low. It sought a sentence that was, it couldn't upwardly vary. That's what I mean. But it was seeking a sentence that was at the high end of the sentencing range here. So it certainly had room to argue various factors that would increase Mr. Hatcher's sentence up to the high point of the sentencing guidelines. And that's what the government did here. But moreover, it's not about whether the issue came as a surprise from the perspective of the government giving notice. The question is whether the court's reliance on this issue came as a surprise. The court had no reason to have this information and, in fact, didn't signal that it was going to rely on that information until it started handing down the sentence itself. The court never said upon hearing the government's speculation and while it was interviewing Agent Hartnett, oh, this seems really important. I think we should focus on this. This may be a basis for my ruling. Nothing like that occurred. It was only in the course of handing down the sentence that the court stated four times that this was a part of the sentencing determination. And so Mr. Hatcher was prejudiced by not having received this prior notice from the court that it was going to consider this issue. Mr. Hatcher's counsel couldn't interview alibi witnesses, couldn't interview witnesses that were potentially at the scene of this alleged crime, couldn't have meaningfully consulted with counsel, couldn't have meaningfully prepared for cross-examination, and, again, from the procedural perspective, couldn't have submitted objections to the PSR or to why the government raised it earlier. He could have objected during the course of the sentencing hearing to the introduction of this argument. As I understand it, it was argued by the government's attorney at the sentencing. That's right, Your Honor. And, again, that is why we're here under a plain error standard for that. The defense counsel did not seek a continuance here. We don't know what would have happened had he sought that continuance. But to go forward and proceeding on this hearing, on this bare record, without defense counsel having these opportunities to meaningfully inquire into this information, that does rise to the level of plain error. Fleming and Coppinger are both cases where this court found plain error. From the record, what is it that you think the court is really saying as to the appearance of this gun or the use of this gun three days earlier? I mean, in your brief, you talk about it as if the court is accusing him of actually using the gun. But the court is pretty clear that it doesn't know the answer to that, right? Isn't it ultimately that all the court knows is the gun was used three days earlier, either because he possessed it, he used it, he just bought it from a criminal? And why isn't that all he's saying? And it doesn't seem to feature big in the, I mean, he clearly is focused on other things. He's had the same crime, the same sentence that didn't work before. So that's the major theme. But I'm trying to figure out what this minor theme even is. And I didn't think it was anything more than he goes back to the neighborhood and he has on him a gun that was used in a crime three days earlier. It's not great. Am I wrong? Am I misstating it? Your Honor, an inference from that fact would be completely irrelevant. The fact that the gun itself was used by somebody three days prior, if it wasn't Mr. Hatcher, should have no bearing in sentencing. And so looking at those four courts Acquiring or getting guns from people that just used it in a violent crime? But why does it matter that the gun was used in a violent crime as opposed to just any other gun? The whole point is he's a felon. It's a gun possession problem. And he seems to be not only possessing guns, but hot guns. Mr. Hatcher wasn't just alleged or wasn't just found by the court to have possessed the gun. It was or continued to use it. He was certainly willing to use it. He affiliated himself with people who were willing to use the gun. And the only gun that's in use that's talked about during this hearing is at this prior shooting. But there's no evidence in the record that supports a conclusion that he knew anything about this uncharged shooting, that he knew the that he had been there or that he knew any of the witnesses. When Agent Hartnett The last comment of the district judge in the course of imposing the sentence then almost immediately gets involved again in violent conduct, either on his own behalf or in interaction with others, resulting in his own injury. So that shows that that is a factor that the district judge was relying on, right? That's right. And the government concedes in its briefing that that comment relates or could conceivably relate to the uncharged shooting. And so that's one of just four comments throughout the history of the laying down of the sentence, which included two comments that were made specifically in discussion as to why a guideline sentence was improper. That the court, in fact, relied upon this issue of the uncharged shooting. And to your point, Judge Sutton, relied on the fact that Mr. Hatcher had a connection to what happened at the uncharged shooting, even though there was no evidence that supports that fact. Even Agent Hartnett testifying or at least giving statements on behalf of the government never said that Mr. Hatcher was involved in the shooting at all. In fact, he said that ATF couldn't prove the case. It couldn't be solved. And although he was able to state a theory that somebody else there had fired at least one shot, he said that all the witnesses were completely uncooperative. So other than these bullet casings, there is no evidence that would tie Mr. Hatcher to the shooting. There's no motive. There is no tangible evidence. And there's no testimonial evidence about that. Just a gun. There is just his possession of a gun three days later. And that single fact cannot, which cannot rise to the level of a preponderance. He shouldn't have said anything about it. I mean, it's not even allowed to say he possessed a gun that was used three days earlier in a violent crime. Can't do that? There's no relevant distinction that gets drawn because of that fact, unless you assume that Mr. Hatcher had involvement in the uncharged shooting. And I see my time is up, Your Honor. Did you concede that the plein air standard applies here? No, Your Honor. On this issue, the question of speculation, we contend that that's an issue of substantive reasonableness. We acknowledge this court's precedence, but believe that the law, the circuit doctrine, requires this court to treat this as an issue of substantive reasonableness, to which no objection was required. And therefore, an abusive discretion standard applies. But plein air applies to the surprise theory. Plein air applies to the surprise theory because that is a procedural issue. Then as to the substantive reasonableness, the question is whether this counts as procedural or substantive reasonableness inquiry, right? We would say there's no question. I know what you're going to say, but I'm asking you what the question is. That is what you're – I got it. Yeah, whether or not this was impermissible speculation that was considered by the court, we contend that that is a substantive issue. Thank you. Thank you. Good morning, Your Honor. May it please the court, James Ewing for the United States. The district court imposed a reasonable sentence which this court should affirm. Mr. Hatcher, in 2015, was convicted and sentenced for felon in possession of a firearm to 46 in a halfway house. Less than two months later, he physically runs away from that halfway house in March of 2017. In April of 2017, he's found with a loaded firearm in his waistband after having been shot. He's taken to the hospital. He absconds from the hospital and is not found again for 13 additional months until he's finally arrested on this case. Those are the undisputed facts that the district court relied on in imposing this upward variance. Now, I want to talk about all three of Appellant's assignments of error, but I want to talk – I'll start first with the standard review issue because that's what the court was talking about last, regarding what I'll refer to as the speculation claim. So we have, you know, the claim that the district court considered an impermissible factor or here that the district court improperly speculated about this prior shooting is appropriately considered as a procedural reasonableness claim because it goes to the process that the district court judge took place when he was fashioning his sentence. And this court has said as much in the last two years in published opinions in Rayon, Parrish, Philroy Johnson, and Lawrence Johnson, and as recently – Don't we have to go back to the first published opinion on the topic? And what is the first published opinion on the topic? Is it Collington? Your Honor, I believe that – so I agree with that. What I would say is that Parrish, Rayon, and Philroy Johnson did not break new ground on this case. Obviously the starting line is Booker, and if you look at – I think I would say that the first case that took this up, this impermissible factor piece, and grappled with it was Malone in 2007. And if you look at this court's decision in Cabrera, which of course Parrish is citing back to Cabrera, Parrish is 2019, Cabrera is 2016, Cabrera points back to Malone. And in Malone, this court said – so now we're less than two years from – Right, but I mentioned Collington. So when – wasn't Collington before Malone? Collington was 2006. We would argue that the impermissible factor issue was not dispositive in Collington. And if you look even further back – The problem with Collington then in your position is that even though Collington said it was a factor in substantive reasonableness, it wasn't the holding. It was only dictated. Correct. And also looking at the fact – even getting more granular than impermissible factor and looking at the question of improper speculation, you know, Parrish was an improper speculation case. Filroy Johnson was an improper speculation case. Twenty-three days ago in an unpublished opinion in Slade-Williams was also an improper speculation case. But looking even further back than Collington, about 75 days after Booker came down, this court handed down Webb. And Webb – I know Webb. I know you do, Your Honor. And so in Webb, the court wasn't breaking it down into substantive and procedural reasonableness yet. However, I would point this court to Penn site page 383 in Webb where the court said that Booker required this court, quote, to consider not only the length of the sentence, which I would contend is substantive reasonableness, but also consider the factors evaluated and the procedures employed by the district court in reaching its sentence determination. That maps on really well to Rayon. That maps on really well to Filroy Johnson. But, you know, all these fine distinctions, do any of these cases wrestle with the only thing that matters here and the only reason you're debating this, which is whether plain air applies or not to an unpreserved air? In other words, the reason this fight matters is to whether you get in the Vonner basket, which says no plain air is to substantive reasonableness objections. But this is a very artificial discussion to go back and look at these cases when they're not being asked the real question, is it plain air or not? It seems to me the question here should be, is this the kind of air you would expect counsel to mention at the hearing? That's the point of the Bostic question, which this court has had for a long time. And Bostic doesn't make any sense when your complaint is, I think the sentence is too long. It just doesn't make any sense. That's the whole premise of challenging the PSR or anything else in the case. So I guess I feel like we can go down this road. There must be 75 cases we can parse here. But the real point is whether you have to preserve the air, right? That's why you guys are fighting about this. It has no other impact. I totally agree, Your Honor. And I think a helpful kind of shorthand to try to figure out whether something is substantive or procedural is, could it be fixed at the Bostic stage? Could it be addressed? And take this case, for example. But that would be true of a sentence being too long. That could be fixed at the trial court stage. You could require, if you wanted to, making up new law, you could require that all objections to any reasonableness aspect of the sentence be raised at the district court so the district court can fix the problem before the court of appeals gets to it. Now, I know reasonableness is a standard for appeals courts and not for district courts. But if the nature of the appeal is going to be it's not a reasonable sentence, either procedurally or substantively, you could say if the sentence is 100 years, you should object to it at the district court level so the district court can fix it. I guess, Your Honor, my response to that would be, let's say that the defendant has allocated at sentencing and asked for a 10-year sentence. And the district court hands down a 15-year sentence. I mean, it's kind of implied that the defendant is disagreeing with the length of the sentence. I mean, in the sense of that's why it's always made sense to me that we don't require him to stand up and say, I object to the length of the sentence. We already know that. But the same would be here. He's gotten a variance upwards. He objects to the variance upwards. What is the basis for the variance upwards? He's arguing the basis for it is this impermissible speculation that he was involved in a prior shooting. So he did object to the variance. But he didn't say... He objected... He didn't say specifically what his objection was. That's true. Right. And had he done that, had he said, you know, Your Honor, I heard you talking about this prior shooting. It was a surprise to me, which, of course, he didn't say that either because he had received it in discovery. Then the court could have done a number of things. The court could have said, no, no, which is what we think really happened here. I didn't consider that. All I considered was the fact that the gun was used in a prior shooting. Or he could have said... Is that a relevant factor, whether a gun that someone possesses three days later was used in a shooting three days earlier? It's absolutely relevant, Your Honor. I mean, that is a gun that is... That's a crime gun. That's a gun that's being used. That's not a gun that... And Mr. Hatcher comes in and says, yes, I'm pleading guilty because I was a felon in possession of this firearm. This firearm's been hanging over my mantelpiece for the last 20 years. I'm fairly sure it works, but I'm not, you know, I'm not even 100 percent sure that it works. We would allow him to put that... It's information about the gun. It's information about, is the gun dangerous? I mean, is the gun... This was not a firearm that he bought at, you know, best case scenario for him. We don't know anything about this firearm, really, except it was in his possession at the time that he was shot, and he is a felon, and therefore he is a felon in possession of this firearm. Well, we know one more thing, Your Honor. We know that it was used, the firearm was used in a shooting not a month earlier, not a week earlier,  Now, whether Hatcher was involved in that shooting or not, that is a relevant factor about that firearm that demonstrates its dangerousness. It demonstrates that Hatcher is involved in... He's already had a federal firearms conviction. He's back in the same area of town. He's involved in the criminal element. He's carrying a gun that was used in a shooting three days prior, and we, you know, I believe this is pointed out by Judge Sutton's point. If you look at how this came out in the sentencing proceeding, this was in response to this claim that I was just carrying the gun for self-defense. Well, that was how the three days prior shooting came out. So whether Hatcher is involved in the shooting or not, that is a relevant fact and circumstance about this case and about the gun that the district court was allowed to consider. How do you address that last comment of the district court that I read to your opponent? There's other ways he could have gone about this rather than escape, and then almost immediately gets involved again in violent conduct, either on his own behalf or in interaction with others, resulting in his own injury. That certainly could have been a reference to him being actively involved in the shooting three days prior. We agree with that. It also could have been the district court saying, you know, here you are, you've already got a federal firearms conviction, you're running away from the halfway house, you're going back to the same area, you're carrying a loaded firearm, and if you look at page ID 97 of the PSR, this shooting that Hatcher, so Hatcher shot, that's how he's found with the firearm. The shooting was an execution-style shooting. It wasn't a robbery gone bad, for example, where what happened was someone walked up behind Hatcher and shot him in the head and then walked away. So this is him, he's back in his same neighborhood carrying a loaded gun, he's, you know, this, it certainly looks like a retaliatory-type shooting, and so it could have been in relation to that. Now we don't think, we would point, we don't think that the district court, going now to the speculation claim, the substance of the speculation claim, unless the court has additional questions about the standard of review, we don't think the court did rely on the fact that Hatcher was actively involved. If you look at page ID 152, the district court was careful to say, so at least we know that the firearm that he possessed had been used by someone in that general area. Page ID 160, we can't prove definitively he is the one that used the firearm to shoot, but we know three days earlier it had been used and discharged. And he says something interesting on page ID 161. The district court says he has a propensity for violence because he has this prior assault conviction. Isn't that an odd thing to say if you think that he was involved in a shooting three days prior, that he's hearkening back to this prior assault conviction? He's not, because he's not relying on that. He's relying on Hatcher's complete criminal history. He does have a propensity for violence. He's back in the same neighborhood. He's carrying a loaded firearm. Those were the reasons why the upward variance. How old was he at the time? He was 26, Your Honor. And so his previous felon in possession conviction, I believe he was 21 at that point. So he's 26 years old. He's already got a criminal history score of 5. And if I may go to what my colleague led off with, was this issue about the misstatement about the two robbery convictions. This goes to that kind of ultimate criminal history. If you look at the PSR, Mr. Hatcher's criminal history was some 20 pages long. He did only have one robbery conviction as an adult. He also had a felonious assault conviction and his federal gun conviction as an adult. Five juvenile convictions, including two burglaries. And he had another arrest for a robbery, but not a conviction. So we think that's probably where the mistake came from. But that misstatement by the district court judge did not change the criminal history category. It did not change the guideline range. And it did not change the district court judge's overall rationale for his upward variance. If you look at page ID 162, at the top of that page, the district court judge explained, this defendant's been involved with the law since he was 15. He's received sentences of probation, incarceration. None of the previous sentences had deterred him from violating the law. He continues to carry a firearm, which was discovered after he was shot. By the way, when he was finally arrested 13 months later, it's because he shot again. So he shot a second time. And that's how the police finally caught him. So he's under a federal sentence where he intentionally walked away from a halfway house, leading to the escape charge. This is why, and he got 46 months previously. The top limit in this case is 51 months. So this case kind of screams out for an upward variance. If he's not, after serving a 46-month sentence, he's right back in the same neighborhood, again carrying a loaded firearm. You agreed in the guilty plea to the sentencing guidelines range, right? That's correct, Your Honor. I mean, we're talking here about the reasonableness of the district. We're not walking away from that. We're saying that the district court's decision to vary upward was reasonable under the circumstances because this individual was not deterred by the previous same crime, 46-month sentence, walks away from a halfway house, and here he is with a gun again. I see I've got a little bit of time. I want to hit the surprise issue. Looking at Coppinger, of course, in Coppinger the situation was these pre-sentence reports were not, they were secret as to everyone except for the defendant that was involved. I think they were co-defendants' pre-sentence reports. So they literally were not available to the defendant, unlike here where we have the information provided in discovery that four shell casings from this gun matched a shooting from three days prior that was provided in discovery. And it's not in the record, but it was provided months before the sentencing in this case. And, you know, so it's not a surprise because he knew about it. But it is arguably a surprise that it's going to be a factor at the sentencing, given that it's not in the PSR. So I would disagree respectfully, Your Honor. Coppinger talks about whether something is reasonably foreseeable, that it would be an issue at sentencing. And it's reasonably foreseeable that if a gun is a felony possession of a firearm case, so the facts and circumstances of the firearm are important. So this firearm, the fact that this firearm was used in a shooting three days prior is a fact and circumstance about that firearm that it's foreseeable would be used in sentencing. I see I'm out of time, Your Honor. Unless there are further questions about any aspect of the case, we'd ask that you affirm the judgment of the district court. Thank you. I'd like to address two main points. First with the speculation and then with regards to the standard review on that claim. I want to push back on the idea that the idea that Mr. Hatcher himself used the gun was not a factor in sentencing. We've already talked about the one quote in which the government concedes that it may have referred to Mr. Hatcher participating in the untried shooting. The court said even a guideline sentence here would not be sufficient to meet the purpose of the sentencing statute. And then afterwards says, and then as we know of course now, he returned to the old neighborhood and continued to use a firearm or have a firearm on or about his person. And so I recognize the judge doesn't know the full extent, but he does in that sentence speculate that he may have continued to use a firearm. He does so again at the beginning of the sentence where he says, and that's why he's going off unfortunately to serve a very lengthy time because of the circumstances here and the history here, the possession of the gun and obviously the gun, whether it's by him or someone else certainly willing to use it. So, I mean, his theory is I need a gun for self-defense. That conjures the image of going to a gun store, registering and keeping the gun with you for a long time. We know that's not what happened here. He did not get this. It was used in a crime three days earlier. The odds that it somehow got to a gun store and he legitimately bought it at a gun store and registered it is utterly implausible. And so why isn't that legitimate? I mean, every time you say something about his using a gun, quoting the judge, you then have to acknowledge there's an or. And I feel like all of that just takes you back to this central point. He said it's a dangerous neighborhood. I needed it for self-defense. And that's just not what it looks like. I'm sorry. And I don't think that's speculation at all. He did not get this at a gun store, register it, and keep it with him at all times. Your Honor, we don't know how he procured the gun. And more importantly, we don't know if he has knowledge of the prior service. Do you think he got it from a gun store? Your Honor, I'm not going to engage in that speculation because I don't think the court should have engaged in that speculation. I understand that. It's implausible, utterly implausible on this record that he went to a general store that sells guns, got his gun, used the waiting period, and complied with all those rules. You have to acknowledge it's not crazy to say that's implausible. But that's a far step from saying that he used the gun, that he had some sort of criminal intent tied to the gun, that his involvement with that gun was otherwise, obviously acknowledging that he did plead guilty to felon in possession, but acknowledging that there was otherwise malintent with respect to the gun. In many ways that somebody could obtain a gun, correct? Like you could go to a gun show and not have to do licensing. Absolutely. You could have a friend who could give you a gun, or you could pick it up off the street and if there was a fight, and then you'd find a gun. Oh, isn't this nice to have a gun? That's correct, Your Honor. I mean, there is nothing in the record here. And to respond to the government's point that this is not just an instrument, this is one that was dangerous. Does it have been used in a crime three days earlier? It wasn't? You know, he's pointed out the example. In other words, you're allowed to ask about how, what's the history of this gun? I mean, I hate to be trite, but guns. You can't ask about the history of a gun? A handgun that was used in a crime is just as dangerous as a handgun that wasn't used in a crime. I mean, there's nothing about that that suggests that the gun itself is more dangerous to the community than any other gun that he could have possessed. Let's assume for the moment that he had bought his gun legally. It would be irrelevant that the gun that he's found to have possessed was just been hanging on the wall all these years. That would be an irrelevant point at a sentencing hearing? I believe it would be, Your Honor. The history of a gun, without tying it to a history of association with otherwise nefarious elements, for instance, doesn't have any relevance to the possession of the gun. Your light is on, so we thank you for your argument. Mr. Bruno, I see that you're appointed pursuant to the Criminal Justice Act, and we thank you for your service to your client and to the pursuit of justice. Thank you. Thank you both, and the case will be submitted.